Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6025 | **DATE** | 5/30/2001 |
| **CASE TITLE** | GRAHNKE vs. HALTER etc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Summary judgment is entered in favor of defendant and against plaintiff. This case is dismissed in its entirety. All pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 31 2001 date docketed | |
| | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/30/2001 date mailed notice | |
| | JS ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK GRAHNKE,<br>SSN: 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<br><br>Plaintiff,<br><br>v.<br><br>WALTER A. HALTER,<br>COMMISSIONER OF SOCIAL SECURITY<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 00 C 6025<br>)<br>)<br>)<br>)<br>)<br>) |



## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Nick Grahnke seeks judicial review of a final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 405(g), 1383(c)(3), arguing that the Commissioner's decision is not supported by substantial evidence. The parties have filed cross-motions for summary judgment. For the following reasons, plaintiff's motion for summary judgment is DENIED, and defendant Commissioner's motion for summary judgment is GRANTED.

### PROCEEDINGS BELOW

Plaintiff applied for SSI effective February 3, 1998, alleging disability by mental illness, a history of seizures, clubbed feet, and pain in the right wrist and both knees. After his claim was denied initially and on reconsideration, Administrative Law Judge ("ALJ") John L. Mondi held a hearing on June 22, 1999, at which plaintiff, represented by counsel, appeared and testified.

1



Plaintiff's grandmother and a vocational expert also testified. On July 29, 1999, the ALJ issued an opinion denying plaintiff's application. The ALJ found that plaintiff had the residual functional capacity for a range of medium work, that he could perform a significant number of other jobs in the economy, and therefore, that he was not disabled. On August 9, 1999, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## STATEMENT OF FACTS

Plaintiff was born November 25, 1977, and was 20 years old on the date of the ALJ's decision. (R. 19-20.) Plaintiff completed his school in a special education program and has past custodial and maintenance work experience. (R. 50.) Plaintiff was born with bilateral club feet, but underwent surgery to correct the problem. (R. 85-91.) Plaintiff also suffered from seizures as a child, but with treatment no longer has seizures. (R. 232.) Plaintiff does, however, have episodes of "staring" on a regular basis. (R. 232.)

Medical Evidence

On April 8, 1998, Mark B. Laggut, Ph.D., a licensed clinical psychologist, conducted a psychological assessment in connection with plaintiff's disability claim. Plaintiff's speech was clear and inteligible, but he showed some difficulty in responding to questions that were not highly specific. (R. 136.) Plaintiff's emotions were somewhat regressed, but otherwise appropriate to the context, and there were no signs of abnormal behavior. (R. 137-38.) Plaintiff admitted that he had a tendency to withdraw from others when confronted with stressful circumstances due to impaired social understanding. (R. 136.) Plaintiff's immediate memory was impaired, his thought processes were of normal speed with average coherence, but he had a poor ability to think abstractly. His computations and arithmetic skills were poor. Plaintiff reported that he heard voices which asked

questions and told him to do things, but the auditory hallucinations were helpful, not frightening. When plaintiff was presented with an unstructured task, he had great difficulty. (R. 138.) Plaintiff was slowly and incompletely oriented to time. (R. 139.)

On the Wechsler Full Scale Intelligence Scale, plaintiff had a full-scale intelligence quotient of 77, representing borderline intellectual functioning. (R. 139.) Plaintiff performed better on tasks requiring a hands on approach or greater reliance on visual/performance tasks than on verbal tasks. (R. 140.) Dr. Laggut concluded that plaintiff could not manage any benefits he might receive, and that plaintiff required structure and supervision to ensure his safe functioning. Dr. Laggut concluded that plaintiff ought to be evaluated for use of medication to ameliorate his impaired thinking and perception, and to rule out schizophrenia.

On May 6, 1998, Jerrold Heinrich, Ph.D., a state agency reviewing psychologist, concluded that plaintiff had borderline intellectual functioning, a personality disorder not otherwise specified, but not schizophrenia. (R. 141-47.) Plaintiff was moderately impaired in the activities of daily living and social functioning, and moderately limited in the ability to understand, remember, and carry out detailed instructions, sustain ordinary routine without special supervision, interact appropriately with the general public, and accept instructions and respond appropriately to criticism by supervisors. (R. 151-52.) Dr. Heinrich noted that plaintiff could follow short, simple instructions, but needed a work setting with close supervision and repetitive tasks, without frequent public interactions, with a supervisor with good leadership skills, without frequent changes in routine, and with assistance in making and exercising realistic plans. Plaintiff could do at least simple unskilled tasks. (R. 153.)

In October 1998, Helen Appleton, Ph.D., another state agency psychologist, reviewed the

3

record and was able to examine the vocational assessment from the Helping Hands agency. R. 172-83.) Dr. Appleton's conclusions were virtually identical to those of Dr. Heinrich, and she affirmatively concluded that plaintiff could perform substantial gainful activity. (R. 183.)

Records from the Illinois Department of Public Aid appear to show that in February 1999, plaintiff was diagnosed with schizophrenia and perscribed anti-psychotic medication to be taken twice a daily. (R. 187-89.)

Employment History

While a student, plaintiff received vocational counseling, job placement, and the services of a job coach. (R. 124.) While working as a hotel banquet aide, plaintiff displayed deficiencies in physical endurance and knowing job tasks, and at times would wonder away from the job site. His pre-vocational coordinator's evaluation included comments that plaintiff would need to take more incentive at work, work more independently, and improve both the quantity and quality of his work. (R. 124.)

Plaintiff worked at four or more fast food restaurants for very short periods of time. He was unable to maintain employment because he was fired and quit jobs because of problems interacting with supervisors, problems with punctuality, and confusion about job requirements. (R. 229-31, 238-42.) Plaintiff had gotten confused in counting out change, forgotten food orders, skipped over customers waiting for food, and forgotten job duties. (R. 329-42.)

Vocational Evaluation

During the period from April 7, 1998 through May 8, 1999, Mr. Ken Stanek performed a vocational evaluation of plaintiff at the Helping Hand Rehabilitation Center. During his initial interview, plaintiff stated that he considered cutting grass, shoveling snow, and running errands for

friends and relatives to be his "own business." Plaintiff was able to get to and from the evaluation site independently, but during the last two appointments, plaintiff made clear that he did not want to be there. Mr. Stanek stated that plaintiff's dress, hygiene, and grooming would have to be monitored and modified poor to obtaining any type of competitive employment. (R. 156.) Mr. Stanek concluded that plaintiff had several vocational assets, including good motor skills and ability to follow three to five sequential requests, community work experience, and the ability to complete a variety of vocational tasks, such as sorting and assembly of three to five piece units. (R. 162.) Plaintiff also has several functional limitations, including the need for improved hygiene and grooming, difficulty accepting supervision, the need for monitoring and structure, an inability to work proportionate to demand, and working very slowly . (R. 162-63.) Mr. Stanek concluded that plaintiff seemed appropriate for community employment, but that his ability to follow all of the necessary dictates of working was questionable, and that some temporary or part-time entry level work would be more appropriate than immediately seeking full-time employment. Mr. Stanek recommended that plaintiff participate with Helping Hand's Community Employment Program to learn skills such as interviewing and ask their assistance in looking for jobs, etc. (R. 163.)

Letter from Rehabilitation Counselor

Plaintiff submitted a letter dated July 6, 1999 from Ms. Grace Gianforte, a certified rehabilitation counselor, who offered her "interpretation" of Mr. Stanek's Helping Hand work evaluation report with regard to its findings about plaintiff's ability to work. (R. 204.) The letter stated that the "cumulative [f]indings are suggestive of an individual not yet ready for competitive employment" for a number of reasons, including diminished concentration, insufficient stamina and endurance, diminished work speed and productivity, difficulty in receiving critisism, inappropriate

behavior, and poor grooming and dress. (R. 204-05.) She further opined that plaintiff's prognosis for future employment is good "with the benefit of vocational rehabilitation." (R. 205.) In the absence of such services, Ms. Gianforte stated "it has been my experience that persons like [plaintiff] will continue to have successive failures in maintaining competitive employment over time." (R. 205.)

Plaintiff's Testimony

In addition to testifying to the employment history outlined above, plaintiff testified that he could not work currently because he had clubbed feet, was not "too good on giving directions," and because he had periods of "stares" he thought were related to his past seizure disorder. (R. 232.) Plaintiff testified that his "stares" were like dreams, and that his employer had complained that he did not respond when addressed during periods of such "stares." Plaintiff thought that these episodes lasted about 45 minutes to an hour or longer, but he was not sure. (R. 239.) Plaintiff testified that his seizure disorder was cured, but that once or twice a week he stared off, was fixated on something, and did not hear conversation directed to him for an unknown period. (R. 232.) Plaintiff testified that he could stand for two or three hours and walk for a "pretty good distance." (R. 233.) Plaintiff also testified to problems with past employment, where he felt his boss was always yelling at him and making him wash his hands more than he felt he had to. (R. 243.)

Testimony of Plaintiff's Grandmother

Grace Grahnke, plaintiff's grandmother, testified that she had a very close relationship with plaintiff since he was a baby and that she saw him almost daily until about last year. She testified that plaintiff had no common sense, did not know directions or how to make change, could not tell time on a non-digital clock, and could not read a bus schedule. (R. 245-46.) She further testified

that plaintiff wanted very much to work and that when, for example, he shoveled snow around her house, he did an excellent job. (R. 246.) Ms. Grahnke testified that plaintiff was able to get hired at fast food restaurants, but that managers soon recognized that he was handicapped, and then the managers either fired plaintiff or made life so miserable that he quit. (R. 247.) Plaintiff could follow simple instructions but not others. If Ms. Grahnke told plaintiff to do something, he would start, his attention would wander, and he would go do something else. However, if she repeated what she wanted, plaintiff eventually did it. She would not be able to tell plaintiff to mow the lawn every Monday to 9:00 a.m. and have him remember it. When plaintiff did work, he did a good job, although it probably took him a little longer than normal. (R. 250.)

Vocational Expert's Testimony

Mr. Clifford Brady testified as a neutral vocational expert in response to several hypothetical questions posed by the ALJ. The ALJ first asked about an individual with plaintiff's vocational profile with a range of medium work and with certain environmental and postural limitations and with mental limitations as set forth by Dr. Appleton in October 1998. (R. 253-45.) Mr. Brady testified that this individual could not perform plaintiff's past work because he was limited to less than all unskilled work -- one and two-step operational activities, which did not include janitorial and fast food work. Mr. Brady testified that the individual could, however, work at simple, unskilled jobs such as hand packaging (5,800 jobs in the Chicago area), mechanical assembly (3,6000 jobs), and electrical assembly (5,100 jobs). (R. 255.) Mr. Brady also testified that the Helping Hands report's reference to working part-time as a transition was a recommendation (with which he agreed), but the report did not limit plaintiff to part-time work. Finally, Mr. Brady testified that if the statements made by plaintiff and his grandmother were accepted as true, plaintiff could not work

7

competitively.

The ALJ's Decision

The ALJ found that plaintiff had the following severe impairments: a history of bilateral club feed treated surgically, a history of seizure disorder, and borderline intellectual functioning. (R. 17.) Plaintiff did not, however, have any impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also found that plaintiff's allegations were not fully credible, and that plaintiff had the residual functional capacity for a significant range of unskilled medium work. R. 18.) Plaintiff could not perform his past heavy work, but he could perform a significant number of jobs in the economy and, therefore, was not disabled. (R. 18-19.) 20 C.F.R. § 416.920(f).

## STANDARD OF REVIEW

The findings of the ALJ as to any fact, which constitute the findings of the Commissioner of Social Security where the Appeals Council denies review, are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Unlike findings of fact, conclusions of law are reviewed de novo. Dotson v. Shalala, 1 F.3d 571, 575 (7th Cir. 1993). The ALJ is not required to comment on every piece of evidence presented, but the ALJ's decision must be based on consideration of all the relevant evidence and the reasons for the conclusion must be stated in a manner sufficient to permit an informed review. Ray v. Bowen, 843 F.2d 998, 1002 (7th Cir. 1988). This court cannot reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. Banuelos v. Apfel, 165 F.3d 1166 (7th Cir. 1999); Luna v. Shalala, 22 F.3d 687, 689 (7th Cir. 1994). The question, therefore, is not whether plaintiff is in fact disabled but rather whether the ALJ's findings were supported by substantial evidence. Books v. Chater, 91 F.3d 972, 977 (7th Cir. 1996). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). The court must consider both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision in deciding whether or not substantial evidence supports the decision. Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir. 1986).

## ANALYSIS

A person is considered disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In order to determine if a claimant is disabled, the ALJ conducts the following five-step inquiry: (1) is the claimant currently employed; (2) does the claimant have a severe impairment; (3) does the impairment meet or exceed one of the impairments listed in 20 C.F.R. § 404, subpart P, appendix 1; (4) can the claimant perform his or her former occupation; and (5) is the claimant unable to perform any work that exists in the national economy. 20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ found plaintiff not disabled at step 5 of the evaluation process, finding that although plaintiff could not perform his past work, he could perform other jobs in the national economy. Because plaintiff has shown an inability to perform past work (step four), the burden shifts to defendant to show that plaintiff is able to engage in some other type of gainful employment. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995). Defendant can meet that burden by showing that plaintiff is capable of performing some other work that exists in significant numbers in the national economy, taking into consideration plaintiff's age, education, and work experience. Lee v. Sullivan, 988 F.2d 789, 792 (7th Cir. 1993).

Plaintiff argues that the ALJ erred in failing to discuss the report of Ms. Gianforte, a certified rehabilitation counselor, who commented on the report of the work evaluation at Helping Hand. Plaintiff argues that Ms. Gianforte's opinion that the Helping Hand evaluation indicated that plaintiff could not perform substantial gainful activity directly contradicts the opinion of Mr. Brady, the vocational expert at the hearing, who testified that the Helping Hand report was consistent with the ability to perform simple work. Plaintiff, citing Groves v. Apfel, 148 F.3d 809 (7th Cir. 1998), argues that the ALJ's decision to accept the opinion of Mr. Brady while "ignoring" the opinion of Ms. Gianforte, is "unreasoned" and thus cannot be upheld. Id. at 811. However, Groves involved a situation in which the ALJ, without any analysis, failed to adopt the findings of a long-term treating specialist, contrary to the dictates of the Social Security regulations. See id. Here, the ALJ merely credited the opinion of one vocational expert over another.

Moreover, plaintiff implicitly admits that Mr. Brady's opinion, upon which the ALJ relied, was based upon substantial evidence, and thus merely identifies alternative findings (i.e., that plaintiff cannot perform substantial work) that could be supported by substantial evidence. Arkansas v. Oklahoma, 503 U.S. 91, 112, 112 S.Ct. 1046, 1050 (1992) ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence.") Finally, in choosing between the testimony of a vocational expert and the report of another vocational expert who did not see the claimant, the ALJ may rely on the opinion of a vocational expert whom he saw at the hearing. Ehrhart v. Secretary of Health and Human Servs., 969 F.2d 534, 541 (7th Cir. 1992). "Furthermore, resolution of evidentiary conflicts lies within the exclusive domain of the ALJ, including the reconciliation of contradictory vocational expert testimony." Id. As such, this court cannot conclude the ALJ erred in evaluating the vocational

testimony.

Plaintiff also argues that the ALJ erred in rejecting the hearing testimony of plaintiff and his grandmother. Vocational expert Mr. Brady testified that if the testimony of plaintiff and his grandmother was fully credited, it would show that plaintiff is incapable of performing substantial gainful activity, and thus disabled. The ALJ found plaintiff's testimony to not be fully credible, and did not mention plaintiff's grandmother's testimony. Plaintiff argues that the ALJ's findings failed to "contain specific reasons for the finding" of credibility, and is not "sufficiently specific to make clear to the individual and any subsequent reviewers the weight of the adjudicator gave to the individual's statements and the reasons for that weight," as required by Social Security Ruling 96-7p.

With regard to plaintiff's testimony, plaintiff argues that the ALJ failed to explain how plaintiff's explanation of his daily activities conflicted with plaintiff's allegations of disability. However, the record in this case is replete with explanations of plaintiff's activities, including walking around, working for neighbors, and doing household chores. There was more than sufficient evidence upon which the ALJ could reasonably conclude that plaintiff is capable of simple work. With regard to the testimony of plaintiff's grandmother, Social Security Ruling 96-7p does not require the ALJ to make credibility determinations of witnesses other than the claimant himself. Again, the ALJ's ruling as a whole is supported by substantial evidence, and this court will not reweigh the ALJ's credibility determinations.

Finally, plaintiff argues that he is disabled because he is incapable of performing substantial gainful activity. In support, plaintiff cites to evidence of his inability to perform certain tasks and general limitations in his abilities. However, the ALJ considered that evidence, and concluded that plaintiff is nonetheless able to perform simple work available in significant numbers in the Chicago

metropolitan area. This court finds nothing in the record which would justify overruling that determination.

## CONCLUSION

For the reasons stated, defendant Commissioner's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED. This case is dismissed in its entirety. All pending motions are moot.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN

United States District Judge

DATE: MAY 30, 2001